**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CLIFFS SALES COMPANY,** ) | CASE NO. 1:07-CV-485 |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| **AMERICAN STEAMSHIP COMPANY,** ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| **Defendant.** ) | |

This matter is before the Court on the Motion of Plaintiff Cliffs Sales Company ("Cliffs") to Disqualify Baker Hostetler as Counsel for Defendant American Steamship Company ("ACS"). (ECF #14). For the reasons that follow, the motion is denied.

**FACTUAL BACKGROUND**

Cliffs moves for an order disqualifying Baker Hostetler attorneys Richard M. Knoth, Michael J. Montgomery, Breaden M. Douthett and the firm of Baker Hostetler as counsel for Defendant ASC. The basis of Cliffs' motion is that Baker Hostetler represented ASC in this matter while simultaneously representing Cliffs' parent company, Cleveland-Cliffs, Inc., in a matter in the U. S. Court of Appeals for the Sixth Circuit. The parties have filed briefs in support of and opposition to the Motion and have

presented testimony and argument on the Motion at a hearing before the Court. Thereafter, both parties filed post-hearing briefs. Based upon all of the information submitted to the Court, the Court sets forth the pertinent facts as follows:

Plaintiff Cliffs is a wholly owned subsidiary of Cleveland-Cliffs Inc. ("CCI"). All of the revenue from CCI's North American operations is generated through Cliffs. Approximately 80% of CCI's total revenue is attributable to its North American segment. Cliffs and CCI share a unity of personnel and are located in the same building in Cleveland, Ohio. Both companies share the same legal department and George Hawk, Jr. acts as general counsel and statutory agent for both companies. Mr. Hawk supervises the actions currently before this Court and also supervised Baker and Hostetler in its handling of *Moore v. Cleveland-Cliffs, Inc*, which was pending in the Sixth Circuit when Baker entered an appearance in this action on behalf of ASC against Cliffs. The current lawsuits before this Court involve the Vessel Transportation Agreement which is of great concern to CCI because the dispute concerns millions of dollars of alleged overcharges for shipments of iron ore to Mittal Steel, CCI's largest customer, and also concerns whether ASC is obliged to make winter deliveries of iron ore to Mittal Steel. As such CCI has disclosed these actions on its most recent Form 10-K as material litigation pursuant to SEC rules.

Cliffs initiated this lawsuit against ASC on February 21, 2007. Richard Knoth, a partner at Baker and Hostetler, was approached by Defendant ASC in early March to represent it in this action. Approximately three weeks later, on March 19, 2007, Baker filed its appearance in this matter with the filing of Defendant's Motion to Dismiss or, in the alternative, for a More Definite Statement.

Prior to accepting the representation of ASC, Mr. Knoth conducted a conflict check. The

check revealed that Baker and Hostetler had never represented Cliffs, although it had represented Cliffs' parent, CCI in the defense of an employee benefits claim brought by a former employee in an action captioned *Moore v. Cleveland Cliffs, Inc*., Case No. 06-6092 (6th Cir. 2006). Mr. Knoth met with Gregory Mersol, the Baker partner who was listed as the responsible attorney for the *Moore* matter. Mr. Knoth testified that Mr. Mersol told him that the case was over. At that time, Mr. Knoth went forward with the representation of ASC in this matter. In fact, the *Moore* matter was still pending in the Sixth Circuit. After the appellant failed to file his brief, the appeal was dismissed on May 7, 2007. Mr. Mersol advised CCI general counsel George Hawk of the dismissal by letter dated May 10, 2007, advising Mr. Hawk that the Moore case, as well as Baker's representation of CCI, was concluded. The parties agree that Baker's representation of CCI in the *Moore* case and Baker's representation of ASC in this matter overlapped for two months. Further, both parties agree that the actions are unrelated.

CCI first learned of Baker's representation of ASC in this action when Baker filed the Motion to Dismiss on March 19, 2007, at which time Baker represented CCI in the Moore case which was still pending in the Sixth Circuit. Mr. Hawk called Mr. Mersol to complain of Baker's conflicting representation of ASC in the pending action. Mr. Mersol told Mr. Hawk that he would follow up on the matter immediately. However, despite several inquiries Baker never responded to Mr. Hawk's concerns. Thereafter, Mr. Hawk instructed Cliffs' attorney in this action, Mr. Fogarty, to follow up. Mr. Fogarty called Mr. Knoth and advised him of the conflict of interest and Mr. Knoth separately confirmed that the *Moore* matter was pending before the Sixth Circuit. Mr. Knoth said he consulted with a Baker partner on the new business committee, John Parker, "talked the issues through, looked at

3

all the relevant case law, and consistent with our engagement letter ... we proceed[ed]." (Hearing Transcript at 50). The engagement letter cited by Baker in support for its decision to continue representation of ASC provides:

> You should understand, however, that in those matters where we are representing a corporation or other legal entity, our attorney-client relationship is with that specific corporation or legal entity and not with its individual officers, directors, executives, employees, shareholders, partners, or other persons in similar positions, or with its parent, subsidiary, or affiliated corporations or persons. In such cases, our professional duties are owed only to the corporation or legal entity that we have agreed to represent, and you will not assert a conflict because we represent other persons, corporations, or entities that are adverse to any of such related persons, corporations, or other legal entities.

However, despite Baker's reference to and reliance on this engagement letter, it appears that there was no engagement letter for the *Moore* action, although an engagement letter may have been signed for prior matters in which Baker represented CCI.

Having made its decision to continue its representation of ASC, Baker did not, however, inform Cliffs or CCI of its decision or otherwise respond to Cliffs and Mr. Hawk's repeated questions regarding the conflict of interest. After several weeks of silence and refusal to explain its actions to CCI, Baker stated in its Reply in support of its Motion to Dismiss that it "would not address Plaintiff's diversionary assertion that a supposed conflict of interest precludes Baker and Hostetler LLP's representation of American Steamship." Accordingly, Cliffs' filed the instant Motion to Disqualify on May 31, 2007.

## DISCUSSION

A motion to disqualify counsel is the proper method for a party to bring an alleged breach of

4

ethical duties to the court's attention. *SST Castings, Inc. v. Amana Appliances, Inc*., 250 F.Supp.2d 863, 865 (S.D. Ohio 2002) citing *Kitchen v. Aristech Chemical*, 769 F.Supp. 254, 256 (S.D. Ohio 1991). A district court has broad discretion in ruling on motions to disqualify counsel. *Pioneer-Standard Electronics v. Cap Gemini America*, N0. 1:01CV2185, 2002 U.S. Dist. LEXIS 7120, at *2 (N.D. Ohio 2002) citing *Gould, Inc. v. Mitsue Min. & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990). However, a trial court does not possess unfettered discretion to disqualify counsel as a violation of the rules of professional responsibility does not automatically necessitate disqualification of an attorney. *Kitchen*, 769 F.Supp. at 257-58. "While motions to disqualify may be legitimate and necessary under certain circumstances, they 'should be viewed with extreme caution for they can be misused as techniques of harassment.'" *SST Castings, Inc*., 250 F.Supp.2d at 865-66, citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982).

In ruling on a motion to disqualify counsel, the court must examine two questions. First, whether the non-moving party's counsel committed an ethical violation and, if so, whether that ethical violation requires disqualification of counsel. *Gould*, 738 F. Supp. at 1124.

Pursuant to Local Rule 83.7, this Court looks to the Ohio Rules of Professional Conduct to determine whether counsel has committed an ethical violation. Plaintiff contends that Baker's conduct has violated Ohio Rule of Professional Conduct 1.7 which provides in relevant part: "A lawyer's acceptance or continuation of representation of a client creates a conflict of interest . . . [when] the representation of that client will be directly adverse to another current client." The first issue for the court is to identify the client. Plaintiff contends that since Baker represented CCI and ASC concurrently for two months, Baker violated Rule 1.7 because CCI's subsidiary Cliffs should also be

5

considered a current Baker client for purposes of Rule 1.7. The Rules of Professional Conduct do not directly address the method for identifying a lawyer's client and comments to the rules note that "principles of substantive law outside these rules determine whether a client-lawyer relationship exists or is continuing." Ohio Prof. Cond. Rule 1.7 cmt 9.

The parties admit that Baker was never retained by Cliffs and has only been retained by CCI on three or four occasions over the last ten years. Thus, the question is did Cliffs have an attorney-client relationship with Baker? Arguing that the existence of an attorney-client relationship turns on contract principals, Baker suggests that the Court should review the terms of the engagement letter between Baker and CCI to determine if the scope of Baker's representation is so broad as to encompass CCI's corporate subsidiaries. See *Dinkins v. Zavarello,* No. 10834, 1983 Ohio App. LEXIS 13918 at *3 (Ohio Cot. App. Feb. 9, 1983) ("The attorney-client relationship is contractual in nature.") Baker asserts that its standard engagement letter makes clear that Baker represented only CCI, not any of its corporate subsidiaries. Further, Baker contends that this limitation of representation comports with Ohio law which recognizes that "parent and subsidiary corporations are separate and distinct legal entities, even if the parent owns all of the outstanding shares of the subsidiary." *The Glidden Co. v. Lumbermens Mutual Casualty Co.*, 861 N.E.2d 109, 117 (Ohio 2006); *White Motor Corp. v. Kosydar*, 50 Ohio St.2d 290, 296, 364 N.E.2d 252, 255-56 (1977).

The only crimp in this argument is that there does not appear to be an engagement letter for the *Moore* matter, although Baker asserts that it provided its Standard Terms of Engagement letter in connection with its earlier representation of CCI in another matter that ended prior to commencement of the present case. Baker contends that these Standard Terms "plainly governed the Moore

6

engagement." (ECF #17, n.2) On cross examination at the hearing on this motion, Mr. Knoth conceded that the engagement letters from previous engagements state that the letter relates only to the specific engagement. Nevertheless, Mr. Knoth asserted that the previous engagement letter "puts everybody on notice that that's how we're going to operate." (Hearing Transcript at 53). While the engagement letter clearly limits Baker's representation to CCI, the Court is unwilling to find that the client is bound by a letter pertaining only to a previous engagement. Nevertheless, these types of engagement letters are necessary in today's business world because so many companies are related in some way that law firms would have substantial conflict issues if a law firm was considered to have an attorney-client relationship with all of a client corporation's related corporations and entities. This reality may have prompted the opinion of the ABA Committee on Ethics and Professional Responsibility relied on by Baker:

> "[T]he Model Rules of Professional Conduct do not prohibit a lawyer from representing a party adverse to a particular corporation merely because the lawyer (or another lawyer in the same firm) represents, in an unrelated matter, another corporation that owns the potentially adverse corporation...."

ABA Comm. On Ethics and Professional Responsibility Formal Op. 95-390 (1995).

Regardless of whether Cliffs, as a wholly owned subsidiary of CCI is considered to be a client of Baker's, Plaintiff argues that Baker committed an ethical violation under Rule 1.7 because its representation of ASC in this matter is adverse to CCI, not just to the named party Cliffs. Logically any parent of a wholly owned subsidiary could argue that an action against the subsidiary, especially one involving millions of dollars, is necessarily adverse to the parent, making Rule 1.7 a *per se* prohibition against concurrent representation of a parent corporation and another client in opposition to

7

the parent's subsidiary, even in an unrelated matter. This *per se* analysis requiring disqualification has been employed in some cases. See *JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F. Supp.2d 20, 21 (S.D.N.Y. 2002)("Even in an age of convenience, for a law firm to bring a multi-million dollar claim on behalf of one corporate client against the primary subsidiary of another of that law firm's corporate clients might be expected to raise eyebrows. In this case, it also requires the law firm's disqualification.")

A more reasoned interpretation of Rule 1.7 does not require a finding of a *per se* conflict of interest when a law firm accepts representation of a corporate client against the subsidiary of a current corporate client. A corporate client's subsidiary is not a client of the firm just by virtue of the fact that it is wholly owned by the law firm's corporate client. Instead, Rule 1.7 requires the Court to examine the facts of each situation to determine if the representation is actually adverse to the corporate client thus creating a conflict of interest.

In this case Cliffs generates all of the revenue from CCI's North American operations which represents about 80% of CCI's total revenue. Cliffs and CCI share a unity of personnel and location. The lawsuit currently before the Court concerns a dispute over millions of dollars of overcharges for shipments of iron ore to Mittal Steel, CCI's largest customer, representing 45% of CCI's North American pellet sales, as well as the question of whether ASC is obligated to make winter deliveries of iron ore to Mittal Steel. While the Plaintiff in this lawsuit is Cliffs, nevertheless, CCI, the parent, was obliged by SEC rules to disclose this litigation as material in its most recent Form 10-K filed in May 2007. Based upon these facts, this litigation is important to CCI and its bottom line and Baker's representation of ASC against Cliffs in this lawsuit is adverse to CCI. Consequently, the Court finds

that Baker's representation of ASC in this lawsuit while CCI was a client was a conflict of interest and a violation of Rule 1.7(a)(1).

The next question that must be addressed is whether disqualification is necessary or appropriate. While some courts have adopted a per se rule requiring disqualification of counsel based on concurrent representation, this Court is persuaded that the better approach is to examine the factual situation to determine if disqualification is necessary. See *Unified Sewage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1345 (9th Cir. 1981) (per se rule); *IBM v. Levin*, 579 F.2d 271, 280 (3d Cir. 1978) (per se rule); *Stratagem Development Corp. v. Heron Int'l N.V.*, 756 F.Supp. 789, 792 (S.D.N.Y. 1991); *Pioneer-Standard Electronics*, 2002 U.S.Dist. LEXIS 7120, at *2 (no per se rule against adverse representation); *SST Castings, Inc.*, 250 F.Supp.2d at 871-72 (same); *The Reuben H. Donnelly Corp. v. Sprint Publishing & Advertising, Inc.*, No.95 C 5825, 1996 U.S. Dist. LEXIS 2363, at *10 (same); *Gen-Cor, L.L.C. v. Buckeye Corrugated, Inc.*, 111 F. Supp.2d 1049, 1057 (S.D. Ind. 2000)(same).

In deciding whether disqualification is necessary, the Court must determine if Baker can represent adverse clients concurrently with equal vigor, without conflict of loyalties and without using confidential information to the detriment of either client. See *Pioneer-Standard*, 2002 U.S. Dist. LEXIS 7120 at *9. In this case the overlap of representation was brief and there is no indication that Baker's ability to represent both clients with equal vigor and without conflict of loyalties was compromised. CCI's matter was handled by Mr. Mersol and none of the Baker attorneys representing ASC had any knowledge or involvement in the Moore matter or any other CCI matter that had ever been handled by Baker. CCI does not contend that it was dissatisfied with Mr. Mersol's

9

representation of its interests in the Moore matter.  Moreover, this action is wholly unrelated to the Moore matter, making it unlikely that Mr. Mersol would have learned information about CCI that would be of use to ASC in the current action.  Mr. Knoth and the other Baker lawyers working on this matter for ASC have submitted affidavits that they have not discussed CCI or Cliffs with Mr. Mersol. As Cliffs is the Plaintiff in the action before this Court, it chose its own counsel to bring this action and its choice was not to use Baker.  Thus, Mr. Hawk, general counsel of CCI and Cliffs, cannot argue that Cliffs was improperly denied the option of engaging Baker's services for this litigation.  There simply is no evidence that CCI or Cliffs has been harmed or prejudiced by Baker's brief concurrent representation of ASC and CCI.       Cliff's argues that disqualification is required because Baker caused the conflict by accepting conflicting representation rather than the conflict arising through merger or acquisition; because the conflict was brought to Baker's attention within days of Baker's appearance in the action but Baker refused to discuss the conflict with its existing client; because ASC will not be prejudiced because it became aware of the conflict at an early juncture before much had occurred in the action; and because ASC's continued  use of Baker should be at its own peril.   Plaintiff's arguments miss the point of the interests that must be balanced by this Court.  The main concern of the Court is whether the clients were represented with "equal vigor, without conflict of loyalties and without using confidential information to the detriment of the other client." *Id.*

While the Court sympathizes with Plaintiff for the callous way in which Baker handled this situation, there has been no showing of actual harm or prejudice to Plaintiff.  The harm manifested is Plaintiff's awareness of its prior and concurrent representation by Baker and Baker's intentional disregard of this relationship as well as the obvious conflict to undertake representation of a party

10

adverse to Plaintiff because there was substantial money to be made by Baker and Plaintiff had not selected Baker to represent them in this case. Disqualification of Baker for these personal slights would serve only as a punishment for Baker and ASC.

It is egregious that Baker refused to discuss the conflict with CCI or its General Counsel or respond to calls and letters, forcing CCI to jump through hoops to bring this matter to the Court's attention. Clients rightfully expect more respect and concern from their attorneys than Baker showed to CCI. Moreover, it is distasteful that Baker's conduct toward Plaintiff appears to be motivated by greed. Clearly, its representation of ASC in this matter concerns a bigger and potentially more profitable piece of work for Baker that the few small matters that CCI had given them in the past. Even though ASC has continued to use Baker at its peril while this motion to disqualify has been pending, Baker was ASC's choice for counsel in this action and it would be unnecessarily prejudiced if it were forced to find new counsel. Motions to disqualify counsel are necessarily fact specific and must be decided on a case by case basis. After carefully examining all of the facts in this case and balancing these facts with the requirements of the Rules of Professional Conduct, the Court has been led to the somewhat distasteful decision that disqualification of Baker is too extreme a punishment for the brief and substantively harmless conflict of interest that occurred in this case.[1]

**CONCLUSION**

---

[1]. The Court feels compelled to clarify that Baker's back door effort to avoid the consequences of its ethical breach by filing essentially the same action in late May after the Moore matter was officially concluded and the conflict was resolved did not influence the Court's decision regarding this motion. If the Court had found actual prejudice or harm to Plaintiff resulting from the concurrent representation, the Court believes that it would have been within its authority to disqualify Baker from both lawsuits.

For the reasons set forth above, Plaintiff's Motion to Disqualify Baker and Hostetler (ECF #14) is denied. A status conference shall be held in this matter and in the related case, 07 CV 1466, on October 24, 2007 at 10:30 a.m. before Judge Donald C. Nugent at the U.S. District Court House, 801 W. Superior Ave., Cleveland Ohio, 44113 in Chambers 15A.

IT IS SO ORDERED.

>*/s/ Donald C. Nugent*
>Judge Donald C. Nugent
>UNITED STATES DISTRICT COURT

DATED:  October 4, 2007